UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-00839 JGB (MRWx)** | Date | August 2, 2016 |
| Title | *Stacy Thompson v. Target Corporation et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:    Order DENYING Plaintiff Stacy Thompson's Motion to Remand (Doc. No. 32) (IN CHAMBERS)**

Before the Court is Plaintiff Stacy Thompson's ("Plaintiff") Motion to Remand ("Motion," Doc. No. 32). After considering the papers filed in support of and in opposition to the Motion and the arguments of counsel, the Court DENIES the Motion to Remand.

## I.   BACKGROUND

In December 2011, Plaintiff filed two actions against defendant Target Corporation ("Defendant") in the Los Angeles County Superior Court ("Superior Court"), identified by case numbers BC475813 (hereinafter Thompson I) and BC474522 (hereinafter Thompson II). (Doc. No. 1-1, 1-2.) The complaint in Thompson I was filed on December 22, 2011 and asserted two class action claims under California Labor Code § 226.7 and California Business and Professions Code § 17200 for failure to provide meal and rest periods and unfair business practices. (Doc. No. 1-2.) The complaint asserted these claims on behalf of a putative class of individuals, other than pharmacists, employed by Defendant on an hourly basis in California retail stores. (Id.) The complaint in Thompson II was filed on December 5, 2011 and proceeded on behalf of the same class of employees as Thompson I, alleged many of the same meal and rest period violations, but sought civil penalties under the Private Attorney General Act ("PAGA"). (Doc. No. 1-1.)

On January 3, 2012, Defendant removed both Thompson I and Thompson II to this Court, where they were consolidated and identified by case number CV 12-0010 JGB (MRWx).

(Doc. No. 1-3.) Defendant removed Thompson II based on the Court's diversity jurisdiction and the Class Action Fairness Act ("CAFA") and removed Thompson I based on the Court's CAFA jurisdiction. (See id.) On May 9, 2014, the Court remanded the action to the Superior Court, finding: (1) Defendant had not proven the total amount in controversy for Plaintiff's claims in Thompson I exceeded $5,000,000, for purposes of removal jurisdiction under CAFA; and (2) the Court had no basis for diversity or CAFA jurisdiction over Thompson II. (Id.)

After remand, Thompson I and Thompson II resumed their prior status as separate cases. On May 13, 2014, Plaintiff filed a First Amended Complaint in both Thompson I and Thompson II. (Doc. No. 1-4, 1-8.) The First Amended Complaint in Thompson I ("Thompson I FAC") again asserted claims under California Labor Code § 226.7 and California Business and Professions Code § 17200 for failure to provide meal and rest breaks and unfair business practices. (See Doc. No. 1-8.) The Thompson I FAC asserted these claims on behalf of a putative class of individuals employed by Defendant on an hourly basis in California retail stores. (Id.) Unlike the original complaint filed in Thompson I, the Thompson I FAC did not exclude pharmacists from the class of employees Plaintiff purported to represent. (Id.)

The First Amended Complaint in Thompson II ("Thompson II FAC") asserted five PAGA claims, on behalf of the same class of employees as Thompson I. (See Doc. No. 1-4.) The Thompson II FAC asserted the following five PAGA claims: (1) PAGA claim for failure to provide meal breaks in violation of Cal. Labor Code §§ 512, 1198; (2) PAGA claim for failure to pay wages required by Cal. Labor Code § 204; (3) PAGA claim for failure to pay wages upon termination under Cal. Labor Code §§ 201, 202; (4) PAGA claim for failure to provide an accurate itemized statement in violation of Cal. Labor Code § 226; and (5) PAGA claim for failure to provide suitable seats in violation of Cal. Labor Code §1198. (Id.)

On April 13, 2015, the Superior Court granted Defendant's motion to consolidate the two actions. (Doc. No. 1-12.) On November 16, 2015, the Superior Court certified a putative class (the "Class") encompassing hourly employees who worked shifts from 2007 to the time of class certification ("Covered Period") and who were not provided with meal and rest breaks by Defendant. ("Class Cert. Order," Doc. No. 1-13.)

On February 5, 2016, Defendant removed the consolidated action to this Court on the basis of CAFA jurisdiction, arguing it had discovered the amount in controversy for Plaintiff's meal period claims under California Labor Code section 226.7(b) exceeded $5 million, as of November 30, 2015. ("Notice of Removal," Doc. No. 1.) Defendant claimed that on January 11, 2016, Plaintiff sent it an e-mail representing that the term "hourly employees," as it appeared in Plaintiff's pleadings and the Superior Court's certification order, included hourly pharmacists employed by Defendant after February 13, 2012. (Id. ¶ 13.) Defendant alleged that until January 11, 2016, it had understood the term "hourly employees" to not include hourly pharmacists and that Plaintiff's e-mail was the first time Plaintiff had represented she was asserting claims on behalf of hourly pharmacists. (Id. ¶¶ 9, 13.) Based on such new information, Defendant claimed it had discovered that the amount in controversy was larger than it had previously believed. (Id. ¶¶ 22-23.) Defendant presented evidence showing that the inclusion of hourly pharmacists in the Class raised the amount in controversy over the $5 million threshold required for CAFA jurisdiction. (Id.)

In support of its Notice of Removal, Defendant presented a declaration by Labor Economist Paul F. White. ("White Decl.," Doc. No. 4.) White averred he had reviewed time-punch and hourly wage data for Defendant's employees and had developed an estimate of Defendant's potential liability for Plaintiff's meal period premium claims. (Id. ¶ 4.) Based on Defendant's data, White estimated Defendant could potentially be liable for $2,207,819 in unpaid meal premiums for hourly employees other than pharmacists, for the period of time spanning December 30, 2007 to November 30, 2015. (Id. ¶ 5.a.) White also estimated Defendant could be liable for $4,894,077 in unpaid meal premiums for hourly pharmacist employees, for the period of time spanning February 14, 2012 to November 30, 2015. (Id. ¶ 5.b.) Hence, White concluded Defendant's total exposure for Plaintiff's meal period premium claims as of November 30, 2015 amounted to a total of $7,101,896. (Id. ¶ 5.c.) Citing White's declaration, Defendant contended it had demonstrated the amount in controversy in this action exceeds $5 million for purposes of CAFA. (Not. of Removal ¶¶ 22-23.)

On March 7, 2016, Plaintiff filed the instant Motion to Remand, seeking remand of both her class claims and her PAGA claims. (Doc. No. 32, 32-1.) In support, Plaintiff filed the following documents:

- Declaration of Plaintiff's counsel Allen Graves ("Graves Decl.") and thirteen accompanying exhibits (Doc. No. 32-2. 32-3); and
- Declaration of D. Scott Bosworth and an accompanying exhibit (Doc. No. 32-4).

On March 14, 2016, Defendant filed an Opposition to the Motion. (Doc. No. 33.) In support, Defendant filed a declaration by its counsel Jeffrey D. Wohl ("Wohl Decl.") and forty-one accompanying exhibits. (Doc. No. 34, 34-1, 34-2, 35-1, 35-2, 35-3, 36-1, 36-2, 36-3.)

On March 21, 2016, Plaintiff filed a Reply to Defendant's Opposition. (Doc. No. 38.) In support, Plaintiff filed a supplemental declaration by her counsel Allen Graves ("Graves Supp. Decl.") and an accompanying exhibit. (Doc. No. 38-1.)

On April 11, 2016, the Court held a hearing on the Motion and considered the arguments of counsel.

## II. LEGAL STANDARD

Generally, a state court action is only removable to federal court if it might have been brought there originally. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of proving its propriety. Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 683–85 (9th Cir. 2006).

Federal courts have original jurisdiction under CAFA where the number of proposed plaintiffs is greater than 100, there is a diversity of citizenship between any member of the class and any defendant, and the amount in controversy is more than $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d); Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). Though a notice of removal need only include a plausible allegation that the amount

in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 550 (2014) (analyzing jurisdiction in the context of when a defendant removes an action to federal court under CAFA). Once jurisdiction under CAFA is established by a preponderance of the evidence, it becomes the burden of the party challenging federal subject-matter jurisdiction to establish the applicability of any statutory exception to CAFA jurisdiction. See Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007).

The removal statutes are construed restrictively, however, and the Court must remand the case if it appears before final judgment that the Court lacks subject matter jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); 28 U.S.C. § 1447(c). However, no presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court. Dart Cherokee, 135 S. Ct. at 554.

### III. PLAINTIFF'S CLASS CLAIMS

Plaintiff argues Defendant improperly removed her class claims (i.e. the subject of Thompson I) on three grounds. First, Plaintiff argues that even assuming CAFA's amount in controversy requirement has been satisfied, removal here was untimely under 28 U.S.C. § 1446(b)(3). (Mot. at 4-16.) Second, Plaintiff contends there have been no events triggering a right to removal because the amount in controversy at the time she filed the Thompson I FAC did not exceed $5 million. (Id. at 16-20.) Third, Plaintiff argues Defendant has waived its right to remove her class claims. (Id. at 20-23.) The Court assesses each of these arguments in turn.

**A. Timeliness of Removal**

**1. Applicable Law**

Procedures for removal are set forth in 28 U.S.C. § 1446. Section 1446(a) provides generally that a defendant seeking to remove a civil action shall file a notice of removal in the district court. 28 U.S.C. § 1446(a). Section 1446(b) requires that a notice of removal be filed within two thirty-day periods: (1) thirty days of receipt from the plaintiff of an initial pleading or (2) if the initial pleading does not clearly indicate whether the case is removable, thirty days from receipt of an amended pleading or some other document from which it is ascertainable that the case is removable. 28 U.S.C. §§ 1446(b)(1), (b)(3). Specifically, the statute reads:

> **(b) Requirements; generally.—(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> . . .
>
> **(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. §§ 1446(b)(1), (b)(3).

"[T]he first thirty-day period for removal in 28 U.S.C. § 1446(b) only applies if the case stated by the initial pleading is removable on its face." Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). The grounds for removal must be set forth "affirmatively in the initial pleading in order for the first thirty day clock under § 1446(b) to begin." Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1141 (9th Cir. 2013).

With respect to both thirty-day periods, "a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." Roth v. CHA Hollywood Medical Center, L.P., 720 F.3d 1121, 1125 (9th Cir. 2013). Rather, "the statute [only] 'requires a defendant to apply a reasonable amount of intelligence in ascertaining removability.'" Kuxhausen, 707 F.3d at 1140; see also Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) ("[W]e don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove."). "Thus, even if a defendant could have discovered grounds for removability through investigation [of an indeterminate pleading or document], it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." Roth, 720 F.3d at 1125. The rationale underlying this rule is straightforward: "it forces plaintiffs to assume the costs associated with their own indeterminate pleadings." Kuxhausen, 707 F.3d at 1141.

The Ninth Circuit has held that while "Section 1446(b)(1) and (b)(3) specify that a defendant must remove a case within thirty days of receiving from the plaintiff either an initial pleading or some other document" showing removability, "these two periods do not otherwise affect the time during which a defendant *may* remove." Roth, 720 F.3d at 1123 (emphasis in original). In other words, "the two periods specified in § 1446(b)(1) and (b)(3) operate as limitations on the right to removal rather than as authorizations to remove." Id. Thus, "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable." Id.

The application of such principles is illustrated by the Ninth Circuit's decision in Roth. In Roth, several defendants in a state wage-and-hour class action filed a notice of removal in the Central District of California more than four months after the filing of the initial pleading in the case. Id. The defendants argued the case met the requirements for CAFA jurisdiction and cited

the diverse citizenship of one would-be class member.  Id.  Plaintiffs filed a motion to remand.  Id.  In opposition, the defendants filed a declaration of the purportedly diverse class member that it had procured after the filing of the initial pleading.  Id.  The district court found removal was improper because the defendants had not removed the action within either of the thirty-day periods set forth in Section 1446(b).  Id. at 1123-24.  The Ninth Circuit reversed, holding that the defendants could remove the action at any time, provided they did not "run afoul" of the two thirty-day periods.  Id. at 1125.  The Ninth Circuit went on to conclude the defendants had not run afoul of either period.  Id. at 1125-26.  First, the Ninth Circuit noted the first thirty-day period under Section 1446(b)(1) was not triggered because the initial pleading in the matter was "indeterminate" as to the diversity of the parties.  Id. at 1125.  Second, the Ninth Circuit found the second thirty-day period under Section 1446(b)(3) was not triggered because the defendants had not received any other documents from the plaintiffs alerting them to the removability of the action.  Id. at 1126.  The Ninth Circuit explicitly held that the fact that the defendants gained subjective knowledge of the removability of the action by independently procuring the declaration of the diverse class member did not trigger either thirty-day period.  Id. at 1125.

        2.        **The Parties' Contentions**

Plaintiff contends Defendant's removal of her class claims is untimely under Section 1446(b)(3).  Plaintiff notes the basis for Defendant's removal is its contention that the inclusion of hourly pharmacists in the Class pushes the amount in controversy on her class claims over CAFA's $5 million threshold.  (Mot. at 6-7.)  However, Plaintiff argues, she submitted a number of papers in the Superior Court showing the Class included hourly pharmacists more than a year prior to Defendant's removal in February 2016.  (Id. at 8-12.)  Plaintiff notes the inclusion of hourly pharmacists in the Class could be ascertained from the following three documents: (1) the Thompson I FAC filed in the Superior Court on May 13, 2014; (2) Plaintiff's Motion for Class Certification and supporting memorandum filed in the Superior Court on October 16, 2015; and (3) the Superior Court's November 16, 2015 ruling certifying the Class.  (Id.)  Plaintiff contends the inclusion of the hourly pharmacists was apparent from each of these documents because, unlike the earlier pleadings filed in Thompson I, none of these documents explicitly excluded hourly pharmacists from the class Plaintiff sought to represent.  (Id.)  Because each of these documents disclosed the basis for Defendant's removal, Plaintiff contends any of these documents sufficed to trigger Section 1446(b)(3)'s thirty-day period for removal.  (Id.)  Hence, Plaintiff contends the deadline for Defendant to remove this action under Section 1446(b)(3) expired as early as June 16, 2014 – thirty days after the filing of the Thompson I FAC.  (Id. at 9-10.)  Alternatively, Plaintiff contends the deadline expired thirty days after the filing of either its October 16, 2015 Motion for Class Certification or the Superior Court's November 16, 2015 certification order.  (Id. at 10-12.)  Because Defendant removed this action in February 2016 – more than thirty days after the filing of any of these documents – Plaintiff contends removal is untimely under Section 1446(b)(3).  (Id.)

Defendant responds that Section 1446(b)(3)'s thirty-day period was not triggered until January 11, 2016 – the date Plaintiff sent it an e-mail stating she was asserting claims on behalf of hourly pharmacists.  (Opp. at 10.)  Because it removed this action on February 5, 2016 – within 30 days of Plaintiff's January 11, 2016 e-mail – Defendant contends its removal was timely.  (Id. at 10.)  Defendant argues that before January 11, 2016, it did not receive any

"amended pleading, motion, order or other paper" from which it could ascertain that the case was removable, for purposes of Section 1446(b)(3). (Id. at 12-16.) In particular, Defendant contends the Thompson I FAC and Plaintiff's Motion for Class Certification did not provide it with notice that hourly pharmacists were included in the Class because both documents defined the Class by referring to data Defendant had provided in discovery regarding employees other than hourly pharmacists.[1] (Opp. at 13-15.)

### 3. Analysis

The Court finds Defendant's removal of Plaintiff's class claims was timely under Section 1446(b)(3). Plaintiff argues the Thompson I FAC, her Motion for Class Certification, and the Superior Court's certification order all placed Defendant on notice that the Class included hourly pharmacists and that her class claims were removable. (Mot. at 8-12.) Hence, Plaintiff contends each of these documents were sufficient to trigger Section 1446(b)(3)'s thirty-day period and that Defendant's removal of her class claims in February 2016 was therefore untimely. (Id.) The Court first looks to the Thompson I FAC and then addresses the Motion for Class Certification and the Superior Court's certification order.

#### a. The Thompson I FAC

The Court finds the Thompson I FAC did not trigger Section 1446(b)(3)'s thirty-day period. According to Plaintiff's own evidence, her class claims were not removable at the time of the filing of the Thompson I FAC on May 13, 2014 because the amount in controversy at that time had not exceeded $5 million. In support of her Motion, Plaintiff submitted a declaration by Managing Economist D. Scott Bosworth. Bosworth estimated that Defendant's total exposure for Plaintiff's meal period premium claims as of May 13, 2014, including the claims of hourly pharmacists, only amounted to $3,905,463. (Bosworth Decl. ¶ 11.) Bosworth estimated that Defendant's exposure "did not reach $5 million until November 2014." (Id. ¶ 12.) Consequently, the Thompson I FAC could not have triggered Section 1446(b)(3)'s period: it could not have constituted an "amended pleading" from which it could "first be ascertained that the case is one which is or has become removable" because Plaintiff's evidence indicates her class claims did not become removable until six months after the Thompson I FAC's filing in May 2014.[2] See 28 U.S.C. § 1446(b)(3).

---

[1] Defendant also claims Plaintiff made numerous discovery requests for information concerning employees other than hourly pharmacists and claims these discovery requests "reinforced [its] understanding that hourly pharmacists were not part of this case." (Opp. at 14-15.) As Plaintiff recognizes, however, this is irrelevant to the question of whether Defendant's removal was timely. (Mot. at 13-16.) Rather, the timeliness of removal turns on whether Defendant received an initial pleading or other document from which removability could be ascertained. See 28 U.S.C. §§ 1446(b)(1), (3). Defendant's "subjective knowledge" is irrelevant to this inquiry and the sole question is whether "it can be ascertained from the face of the [relevant] document that removal is proper." Harris, 425 F.3d at 694.

[2] In her Reply, Plaintiff claims Castro v. Maxim Healthcare Servs. Inc., No. CV 11-02839-JHN, 2011 WL 2461930, at *1 (C.D. Cal. June 20, 2011) supports the conclusion that

b. **Plaintiff's Motion for Class Certification and the Superior Court's Certification Order**

The Court finds Plaintiff's Motion for Class Certification and the Superior Court's certification order also could not have triggered Section 1446(b)(3)'s thirty-day period because, on their face, neither indicated hourly pharmacists were included in the Class. Plaintiff's Motion for Class Certification sought to certify four subclasses of employees and explicitly referenced data provided by Defendant during discovery when defining these proposed subclasses.[3] All four of these subclasses encompassed "all hourly employees" of Defendant "who are identified in Defendant's data."[4] (Graves Decl., Ex 2 ("Class Cert. Mot.") at 1.) Defendant has presented a

---

Defendant's removal was untimely under Section 1446(b)(3). (Reply at 2-3.) In Castro, the plaintiff in a wage-and-hour class action filed an amended pleading in state court increasing the size of the putative class. Castro, 2011 WL 2461930, at *1. Nearly a year later, plaintiff's counsel sent defense counsel e-mails outlining the scope of the putative class. Id. at 2. The defendant then removed the action on the basis of CAFA jurisdiction. Id. Much like Defendant, the defendant in Castro claimed removal was timely because the e-mails constituted an "other paper" under 28 U.S.C. § 1446(b)(3), from which removability could first be ascertained. Id. Specifically, the defendant claimed one of the e-mails "'provided the first information from which it could be ascertained that the amount in controversy exceeded the jurisdictional minimum and was thus removable.'" Id. The court in Castro rejected this argument, finding the grounds for removability – namely, the expansion of the class – were apparent from plaintiff's amended pleading. Id. at 4. Hence, the court found plaintiff's amended pleading – not the subsequent e-mails – triggered Section 1446(b)(3)'s thirty-day period and that defendant's removal one year later was untimely. Id.

The Court finds Castro distinguishable because Defendant could not have ascertained Plaintiff's class claims were removable from the Thompson I FAC. Indeed, Plaintiff's own evidence establishes that the amount in controversy "did not reach $5 million until November 2014" – six months after the Thompson I FAC was filed. (Bosworth Decl. ¶ 12.)

[3] Plaintiff also originally sought to certify a fifth subclass encompassing "[a]ll Hourly Employees listed in Defendant's exhibit TARGET_STI-021703-021706." (Class Cert. Mot. at 1.) Plaintiff abandoned this fifth subclass in her reply brief in support of class certification. (Wohl Decl. ¶ 32.)

[4] Plaintiff suggests that the Class definition was not limited to employees referenced in the data previously provided by Defendant during discovery. (Reply at 8-9.) Plaintiff contends the "data [she] had to work with was not comprehensive" and that the information she obtained in discovery concerned "samples and sub-sets" of the Class. (Id. at 9.) Even assuming Plaintiff understood the Class to consist of more than just the employees referenced in the data produced by Defendant during discovery, Plaintiff's Motion for Class Certification did not make this clear and was, at best, "indeterminate" as to whether hourly pharmacists were included in the Class. See Roth, 720 F.3d at 1125.

---

declaration from its counsel averring that it did not produce any data regarding its hourly pharmacists during discovery because it believed Plaintiff was asserting claims on behalf of non-pharmacist employees. (Wohl Decl. ¶¶ 9, 10, 14, 22.) Plaintiff has not provided evidence contesting defense counsel's declaration.[5] Moreover, defense counsel states that "although [P]laintiff filed 27 declarations from class members in support of her motion, not a single one came from an hourly pharmacist." (Id. ¶ 31.) Given that the language of the Class definition referenced data excluding hourly pharmacists and that the Motion did not include evidence concerning hourly pharmacists, the Court concludes Plaintiff's Motion left it unclear whether hourly pharmacists were included in the Class.

The Superior Court's certification order also contained no mention of hourly pharmacists when defining the Class. In fact, the Superior Court's certification order shed little light on the nature of the Class and largely consisted of a statement of the requirements for class certification under California law. (See Class Cert. Order at 1-5.)

Because neither Plaintiff's October 2015 Motion for Class Certification nor the Superior Court's November 2015 certification order made clear that the Class included hourly pharmacists, neither document alerted Defendant that Plaintiff's class claims were removable. The evidence presented by Defendant indicates that the amount in controversy in November 2015 for meal period claims involving hourly employees other than pharmacists was only $2,207,819 and this amount rose to $7,101,896 only if the meal period claims of hourly pharmacists were included in the calculation. (See White Decl. ¶ 5.a.) Because neither Plaintiff's Motion for Class Certification nor the Superior Court's certification order indicated hourly pharmacists were included in the Class, these documents did not alert Defendant that the amount in controversy on Plaintiff's class claims exceeded $2,207,819 and met the $5 million threshold for CAFA jurisdiction. In short, both documents were "'indeterminate' with respect to removability" and consequently did not trigger Section 1446(b)(3)'s thirty-day period. See Roth, 720 F.3d at 1125; see also Reyes v. Dollar Tree Stores, Inc., 781 F.3d 1185, 1189 (9th Cir. 2015) (holding class certification order expressly putting defendant on notice that class had been enlarged triggered Section 1446(b)(3)'s thirty-day period); Durham, 445 F.3d at 1251 ("[W]e

---

[5] Plaintiff claims Defendant produced data in discovery regarding pharmacy employees. (Mot. at 15-16.) In support, Plaintiff presents copies of declarations by Defendant's pharmacy technicians Imran Valiani and Jan Oliver Liwag that she filed in connection with her Motion for Class Certification. (Graves Decl., Ex. 4-5.) Plaintiff also presents a declaration from her counsel averring that "[e]ach of the pharmacy workers from whom Plaintiff obtained declarations appeared in time records, payment records and a list of contact information, all provided by Defendant." (Graves Decl. ¶ 7.) However, as Defendant notes, "not all pharmacy employees are pharmacists." (Opp. at 6 n.1.) In other words, Defendant maintains that while it provided Plaintiff with data concerning pharmacy employees, including pharmacy technicians, it did not provide her with data concerning hourly pharmacists because it believed Plaintiff's claims only concerned employees who were not hourly pharmacists. (Id. at 6 n.1, 8 n.2; see also Wohl Decl. ¶¶ 9, 10, 14, 22.) Plaintiff provides no evidence in response indicating she received data concerning hourly pharmacists prior to the filing of her Motion for Class Certification.

don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove.").

### c. Conclusion

The Court therefore concludes that none of the three documents identified by Plaintiff – namely, the <u>Thompson I</u> FAC, the Motion for Class Certification, and the Superior Court's certification order – triggered Section 1446(b)(3)'s thirty-day period. Rather, the record indicates that Defendant did not receive written notice from Plaintiff that hourly pharmacists were included in the Class until she sent the January 11, 2016 e-mail to defense counsel. Because Defendant removed this action within thirty days of the e-mail, removal was timely under Section 1446(b)(3).

Accordingly, the Court DENIES Plaintiff's Motion to the extent it argues Defendant's removal of her class claims was untimely under Section 1446(b)(3).[6]

## B. Right to Remove

### 1. Applicable Law

CAFA vests federal district courts with original jurisdiction of any class action in which minimal diversity of citizenship exists between at least one member of the putative class and at least one defendant, the class consists of at least 100 members, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). When a plaintiff contests a defendant's allegation that the amount in controversy exceeds $5 million, a defendant

---

[6] Plaintiff argues that "Section 1446(b)(3)'s deadline exists in part to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court." (Mot. at 23 (internal quotation marks and citation omitted).) Plaintiff notes she was forced to litigate this matter in this Court when Defendant first removed this case in 2012 and again re-litigated this matter in the Superior Court upon remand. (<u>Id.</u> at 23-24.) Plaintiff complains that if the Court finds Defendant's latest attempt at removal was timely under Section 1446(b)(3), she will be forced to litigate this matter anew for a third time. (<u>Id.</u>) Plaintiff also claims it "begs credulity" that Defendant "just happened to discover the matter was removable right after it lost class certification" in the Superior Court. (<u>Id.</u> at 25.)

The Court acknowledges both the practical implications of permitting Defendant to remove this matter once again and the possibility that Defendant has engaged in unfair gamesmanship. However, such considerations are irrelevant to whether removal was timely. Indeed, the Ninth Circuit has explicitly acknowledged that in actions subject to CAFA, "defendants will be able to take advantage of the fact that neither the 'initial pleading' nor any later document received from plaintiff triggers one of the two thirty-day periods [set forth in Section 1446(b)]" and "may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so." <u>Roth</u>, 720 F.3d at 1126.

seeking removal must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553-54 (2014). A defendant can satisfy this burden by submitting evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). The amount-in-controversy requirement is "tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

### 2. The Parties' Contentions

In its Notice of Removal, Defendant argued Plaintiff's claims for unpaid meal period premiums exceed $5 million. (Not. of Removal ¶¶ 22-23.) In support, Defendant presented a declaration by Labor Economist Paul F. White. ("White Decl.," Doc. No. 4.) White averred he had reviewed time-punch and hourly wage data for Defendant's employees and had developed an estimate of Defendant's potential liability for Plaintiff's meal period premium claims. (Id. ¶ 4.) Based on Defendant's data, White estimated Defendant could potentially be liable for $2,207,819 in unpaid meal premiums for hourly employees other than pharmacists, for the period of time spanning December 30, 2007 to November 30, 2015. (Id. ¶ 5.a.) White also estimated Defendant could be liable for $4,894,077 in unpaid meal premiums for hourly pharmacist employees, for the period of time spanning February 14, 2012 to November 30, 2015. (Id. ¶ 5.b.) Hence, White concluded Defendant's total exposure for Plaintiff's meal period premium claims as of November 30, 2015 amounted to a total of $7,101,896. (Id. ¶ 5.c.) Citing White's declaration, Defendant contended it had demonstrated the amount in controversy on Plaintiff's class claims exceeds $5 million, for purposes of CAFA. (Not. of Removal ¶¶ 22-23.)

Plaintiff argues the amount in controversy on her class claims must be calculated as of May 13, 2014 – the date she filed her operative pleading in Thompson I – and cites a number of authorities purportedly holding the Court cannot consider damages that accrue after suit is filed.[7]

---

[7] Plaintiff also briefly argues that the Court cannot consider damages that accrued after the filing of her operative pleadings in May 2014 under the "voluntary-involuntary rule." (Mot. at 5-6, 17.) According to Plaintiff, the rule provides that only a "voluntary act of the plaintiff" can render a case removable. (Id. at 17 (internal citation and quotation marks omitted).) Plaintiff contends the Court cannot consider damages that accrued after the filing of the Thompson I FAC because these damages were caused by Defendant's unlawful conduct and not by any voluntary act by Plaintiff. (Id. at 5-6, 17.)

The voluntary-involuntary rule provides that "a suit which, at the time of filing, could not have been brought in federal court must remain in state court unless a voluntary act of the plaintiff brings about a change that renders the case removable." People of State of Cal. By & Through Lungren v. Keating, 986 F.2d 346, 348 (9th Cir. 1993) (internal citation and quotation marks omitted). The rule is typically applied in a situation where a properly joined non-diverse defendant is dismissed for reasons beyond the control of the plaintiff. See id. Plaintiff does not cite and the Court cannot find any authority holding that the rule bars removal where a

(Mot. at 17-18.) Hence, Plaintiff contends, White's estimate of the total amount in controversy is erroneous because it relies on estimates of meal period violations that occurred between May 13, 2014 and November 30, 2015 for both pharmacist and non-pharmacist employees. (Id.) Moreover, Plaintiff submits a declaration by Managing Economist D. Scott Bosworth. Bosworth estimates Defendant could be potentially liable for $1,425,350 in unpaid meal premiums for hourly employees other than pharmacists, for the period of time spanning December 30, 2007 to May 13, 2014. (Bosworth Decl. ¶ 11.) Bosworth also estimates Defendant could be potentially liable for $2,480,113 in unpaid meal premiums for hourly pharmacists, for the period of time spanning February 14, 2012 to May 13, 2014. (Id.) Thus, Bosworth concludes that Defendant's total exposure for Plaintiff's meal period premiums as of May 13, 2014 only amounts to $3,905,463. (Id.) Citing Bosworth's declaration, Plaintiff contends that the total amount in controversy at the time of the filing of the Thompson I FAC does not exceed CAFA's $5 million threshold. (Mot. at 17.)

Defendant responds that the amount in controversy on Plaintiff's class claims must be calculated at the time of removal, that is, as of February 5, 2016. (Opp. at 17-19.) Hence, Defendant contends the estimate of the total amount in controversy must take into account alleged meal period violations that occurred after the Thompson I FAC was filed. (Id.)

In short, the parties dispute whether, for purposes of removal jurisdiction, the amount in controversy must be calculated as of the time of the filing of the operative pleading (i.e. May 13, 2014) or the time of removal (i.e. February 5, 2016).

### 3. Analysis

Plaintiff's arguments are meritless. Ninth Circuit precedent clearly holds that the amount in controversy for purposes of CAFA jurisdiction is calculated as of "the time of removal."[8]

---

defendant's conduct after suit is filed causes the amount in controversy to exceed the statutory minimum for removal jurisdiction.

In any case, Plaintiff's invocation of the voluntary-involuntary rule is meritless because her class claims became removable as a result of her own voluntary action. As Defendant notes, "[P]laintiff voluntarily decided to seek relief on behalf of hourly pharmacists" from February 2012 to the present. (See Opp. at 16-17 n.9.) As a result, the constant accrual of potential damages from Plaintiff's class claims eventually exceeded the $5 million threshold for CAFA jurisdiction. In short, Plaintiff's claim to the contrary notwithstanding, the removability of this action is traceable to a voluntary act by Plaintiff.

[8] Plaintiff argues that even if the amount in controversy at the time of Defendant's removal exceeded $5 million, removal was improper because Defendant unsuccessfully attempted to remove this case in 2012. (Mot. at 5.) Plaintiff argues that "'[a] successive removal petition is permitted only upon a relevant change of circumstances – that is, when subsequent pleadings or events reveal a new and different ground for removal.'" (Id. (quoting Reyes v. Dollar Tree Stores, Inc., 781 F.3d 1185, 1188 (9th Cir. 2015).) Presumably, Plaintiff means to argue that the

Ibarra, 775 F.3d at 1197 (internal citation and quotation marks omitted). Moreover, the cases cited by Plaintiff that state the Court must assess the amount in controversy at the time suit is initiated are inapposite. Most of the cases Plaintiff cites were initiated in federal court and were not removed from state court. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004) (action originally initiated in federal court); Hill v. Blind Indus. & Servs. of Maryland, 179 F.3d 754 (9th Cir.) (same), opinion amended on denial of reh'g, 201 F.3d 1186 (9th Cir. 1999); Bayol v. Zipcar, Inc., No. CV 14-02483-TEH, 2015 WL 4931756 (N.D. Cal. Aug. 18, 2015) (same). The two remaining cases Plaintiff cites actually hold that the amount in controversy is calculated as of the time of removal.[9] See Otay Hydraulics, Inc. v. Safety-Kleen Sys., Inc., No. CV 12-07357-ODW (VBKx), 2013 WL 1898573, at *2 (C.D. Cal. May 6, 2013) (noting "the amount in controversy must be assessed at the time of removal"); Killion v. AutoZone Stores Inc., No. CV 10-01978-JHN (AGRx), 2011 WL 590292, at *1 (C.D. Cal. Feb. 8, 2011) ("The amount in controversy is tested at the time of removal, not as increased or decreased due to later events."). Hence, the Court must determine whether Defendant has demonstrated the amount in controversy on Plaintiff's class claims at the time of removal exceeded $5 million.

Applying this standard, the Court finds Defendant has presented sufficient evidence demonstrating the amount in controversy on Plaintiff's class claims exceeded $5 million at the time of removal. Here, Plaintiff continues to represent that the class of employees identified in the Thompson I FAC includes hourly pharmacists employed by Defendant from February 13, 2012 to the present. (See Mot. at 1.) Defendant has presented a declaration by White estimating that Defendant's total exposure for Plaintiff's meal period premium claims as of November 2015

---

grounds for Defendant's second removal attempt are neither "new" nor "different" from the grounds it cited during its first removal attempt.

Plaintiff's argument is meritless. Between the time of Defendant's first and second removal attempts, Plaintiff amended her pleadings and broadened the class she sought to represent to include hourly pharmacists employed by Defendant from February 13, 2012 to the present. (See Mot. at 1 ("After this Court remanded [in May 2014], Plaintiff amended her Complaint to add a small group of less than 1,000 pharmacists . . . who had been excluded from her prior pleadings.").) As a result, the amount in controversy increased. The increased amount in controversy constitutes a "new and different ground for removal." See Reyes, 781 F.3d at 1188. Hence, Defendant's second attempt at removal based on this increased amount in controversy is permissible. See id. at 1188-89 ("When pleadings are amended so as to establish federal jurisdiction where none existed before, a successive removal petition is plainly proper.").

[9] Plaintiff also cites Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 375 (9th Cir. 1997), for the proposition that the Court must disregard "events occurring subsequent to the institution of suit." (Mot. at 18 (alteration omitted).) In actuality, Singer states that "'[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust [diversity] jurisdiction'" once it has already attached. 116 F.3d at 375 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 293 (1938)) (emphasis added). This proposition has no relevance to whether Defendant's removal of Plaintiff's class claims was proper.

amounted to a total of $7,101,896, if the claims of hourly pharmacists are included in the calculation of Defendant's potential liability. (See White Decl. ¶ 5.c.) Plaintiff has not presented any evidence contesting White's estimate.

Accordingly, the Court DENIES Plaintiff's Motion to the extent it challenges whether the amount in controversy as to her class claims exceeds the statutory minimum required for CAFA jurisdiction.

**C.     Waiver**

   **1.     Applicable Law**

Even where removal is proper, a defendant "may waive the right to removal where, after it is apparent that the case is removable, the defendant takes action in state court that manifests his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1240 (9th Cir. 1994). "A waiver of the right of removal must be clear and unequivocal." Id. "[T]he right of removal is not lost by actions in the state court short of proceeding to an adjudication on the merits." Id. Moreover, a party does not waive the right to remove by taking a "necessary defensive action to avoid a judgment being entered automatically against him." Id.

   **2.     The Parties' Contentions**

Plaintiff argues Defendant waived its right to remove her class claims by repeatedly seeking to terminate this litigation in the state court proceedings. (Mot. at 20.) First, Defendant filed a demurrer and a motion to strike, both of which were denied by the Superior Court on October 7, 2014. (Id.) Defendant then sought to reverse the Superior Court's decision by filing a petition for a writ of mandate in the California Court of Appeal and a subsequent appeal in the California Supreme Court once the petition was denied. (Id.) Second, Defendant opposed class certification in the Superior Court and filed a petition for a writ of mandate on January 15, 2016 in the California Court of Appeal seeking review of the Superior Court's certification order.[10] (Id.) Plaintiff also argues the timing of Defendant's January 15, 2016 petition for writ of mandate manifests bad faith because Defendant claims to have discovered the grounds for

---

[10]     Plaintiff notes Defendant's petition for a writ of mandate is still pending in the California Court of Appeal. (Mot. at 20.) Plaintiff faults Defendant for failing to "dismiss its state court petition even after removal." (Id. (emphasis omitted).) However, the record reflects Defendant notified the California Court of Appeal on February 8, 2016 that it had removed this action and that the Court of Appeal subsequently suspended all proceedings in connection with the petition. (See Wohl Decl., Ex. 40, 41.) Under the removal statute, Defendant was required to do no more than provide notice to the state court of its removal of this case. See 28 U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.").

removal of this action after receiving Plaintiff's January 11, 2016 e-mail regarding the scope of the Class. (Id. at 22.)

Defendant presents two arguments in response. First, Defendant argues district courts have held that "far more aggressive litigation conduct in state court, including filing demurrers and in some cases pursuing motions for summary judgment, does not constitute waiver" of the right to remove. (Opp. at 21.) Second, Defendant contends its January 15, 2016 petition for a writ of mandate in the California Court of Appeal was a "defensive act to preserve an option for appellate review in the event the case [w]as remanded." (Id. at 21-22.) Defendant notes that under California law, January 15, 2016 – the sixtieth day following the Superior Court's certification order – was the last day it could file the petition for review of the certification order. (Id. at 19-20 (citing California authority holding that a writ petition must be filed within sixty-day period).) Moreover, Defendant proffers a declaration by defense counsel averring Defendant had not ascertained that the amount in controversy exceeded CAFA's statutory minimum on the date it filed the petition. (See Wohl Decl. ¶ 43.) Defense counsel claims that although Plaintiff sent Defendant an e-mail on January 11, 2016 indicating the Class encompassed hourly pharmacists, Defendant did not "reach a conclusion" that the amount in controversy exceeded $5 million until January 20, 2016. (Id. ¶ 41.) Hence, Defendant claims it filed its January 15, 2016 petition to preserve its right to appellate review of the certification order while it ascertained whether the action was removable. (Opp. at 21.)

### 3. Analysis

The Court finds Defendant's actions in the state court proceedings do not "manifest[] [its] intent to have the matter adjudicated there." Resolution Trust Corp., 43 F.3d at 1240. While Defendant aggressively litigated this matter at various levels of the California court system prior to removal, the Court finds Defendant did not receive any document from which it could ascertain the removability of Plaintiff's class claims until Plaintiff's e-mail on January 11, 2016. Hence, given that removability could not be ascertained until January 11, 2016, it would be unfair to find Defendant voluntarily relinquished its right to remove through its appearances and filings in state court before this date. See Soliman v. CVS RX Servs., Inc., 570 F. App'x 710, 712 (9th Cir. 2014) ("CVS also did not waive its right to remove through its appearances in state court, as those appearances were before it became apparent that the case was removable.").

Moreover, Defendant's January 15, 2016 petition in the California Court of Appeal also did not waive Defendant's right to removal. Even though Defendant filed the petition after receiving Plaintiff's January 11, 2016 e-mail, the record indicates Defendant filed the petition to preserve its right to appellate review of the Superior Court's certification order while it was assessing whether the inclusion of hourly pharmacists rendered this action removable. (Wohl Decl. ¶ 43; Opp. at 19-20.) Defendant's January 15, 2016 petition is thus more properly considered a "defensive action" intended to preserve the status quo and not an act seeking a determination on the merits. See Capretto v. Stryker Corp., No. C07-03390 WHA, 2007 WL 2462138, at *3 (N.D. Cal. Aug. 29, 2007) ("'The critical factor in determining whether a particular defensive action in the state court should operate as a waiver of the right to remove is the defendant's intent in making the motion. If the motion is made only to preserve the status quo

ante and not to dispose of the matter on its merits, it is clear that no waiver has occurred.'") (quoting Bolivar Sand Co. v. Allied Equip., Inc., 631 F. Supp. 171, 173 (W.D. Tenn. 1986)).

Accordingly, the Court DENIES Plaintiff's Motion to the extent it argues Defendant waived its right to remove her class claims.

### IV.   PLAINTIFF'S PAGA CLAIMS

Plaintiff argues that even assuming her class claims were properly removed, the Court lacks jurisdiction over her PAGA claims (i.e. the subject of Thompson II). (Mot. at 23.) The Court addresses this argument below.

**A.   The Parties' Contentions**

Plaintiff argues the Court does not have jurisdiction over her PAGA claims. (Mot. at 23.) Even though Thompson I and Thompson II were consolidated into a single case by the Superior Court on April 13, 2015, Plaintiff maintains the two cases are "each . . . a separate action based on a separate complaint." (Id.) Consequently, Plaintiff argues her PAGA claims are barred from removal under 28 U.S.C. § 1446(c)(1), which provides "[a] case may not be removed . . . more than 1 year after commencement of the action."[11]  28 U.S.C. § 1446(c)(1).

Defendant responds that the Superior Court consolidated Thompson I and Thompson II for "all purposes." (Opp. at 23-24.) Defendant notes that the Ninth Circuit held in Bridewell-Sledge v. Blue Cross of California, 798 F.3d 923, 925 (9th Cir. 2015), that "under California law, when two actions are consolidated 'for all purposes,' the two actions are merged into a single proceeding . . . and the actions are treated as if only one complaint had originally been filed." (Opp. at 23.) Consequently, Defendant argues, "Bridewell-Sledge directs this Court to treat plaintiff's class claims and PAGA claims as though they were alleged in the same complaint." (Id. at 23-24.) According to Defendant, "[a]llowing part of this consolidated case [(i.e. Thompson II)] to proceed in state court would produce an 'incongruous result' that the Ninth Circuit in Bridewell-Sledge directed courts to avoid." (Id. at 24.) Defendant therefore contends the Court should treat Plaintiff's PAGA claims as part of the same action as Plaintiff's class action claims and exercise supplemental jurisdiction over the PAGA claims. (Id.)

**B.   Analysis**

Here, the Court does not have original jurisdiction over Plaintiff's PAGA claims. Under 28 U.S.C. § 1446(c)(1), "[a] case may not be removed under subsection [1446](b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action." 28 U.S.C. § 1446(c)(1). 28 U.S.C. § 1453(b) provides an exception to this rule and states "the 1-year limitation under section 1446(c)(1) shall not apply" to a "class action." 28 U.S.C. § 1453(b). A "class action" is defined by CAFA as "any civil action filed under rule 23 of the

---

[11]   As Plaintiff recognizes, under CAFA, her class action claims (i.e. the subject of Thompson I) are not subject to Section 1446(c)(1)'s one-year bar. See 28 U.S.C. § 1453(b).

Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B); Baumann v. Chase Inv. Servs. Corp., 747 F.3d 1117, 1120 (9th Cir.), cert. denied, 135 S. Ct. 870 (2014). The Ninth Circuit has held that PAGA representative actions do not constitute a "class action" under CAFA. Baumann, 747 F.3d at 1124 (holding a PAGA suit is not a "class action" as defined in 28 U.S.C. § 1332(d)(1)(B)). Hence, Section 1446(c)(1) bars the Court from exercising original jurisdiction over Plaintiff's PAGA claims pursuant to Section 1332.

Nonetheless, given that the Court finds it has original jurisdiction over Plaintiff's class claims under CAFA, the Court may exercise supplemental jurisdiction over Plaintiff's PAGA claims. Under 28 U.S.C. § 1367(a), "district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA claims are therefore properly within the Court's supplemental jurisdiction. See id. Moreover, Section 1446(c)(1)'s one-year limitations period does not bar supplemental jurisdiction: by its plain text, it only acts as a restriction on the Court's original jurisdiction "conferred by section 1332." See 28 U.S.C. § 1446(c)(1).

Accordingly, the Court DENIES Plaintiff's Motion to the extent it argues the Court lacks jurisdiction over her PAGA claims.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand (Doc. No. 32).[12]

**IT IS SO ORDERED.**

---

[12] Plaintiff asks that Defendant be ordered to pay costs and attorney's fees incurred in connection with the Motion. (Mot. at 24-25; Reply at 12.) Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.'" Gardner v. UICI, 508 F.3d 559, 561 (9th Cir. 2007) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)). Here, the Court denies Plaintiff's Motion and thus also declines to award costs and attorney's fees to Plaintiff.